Patricia R. **LEVIS,**
Petitioner/Respondent/Cross-Appellant,

v.

John G. **LEVIS,**
Respondent/Appellant/Cross-Respondent.

Nos. 50596, 50655.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 30, 1986.

Rehearing Denied Aug. 8, 1986.

Justin C. Cordonnier, Thomas Blumeyer Weaver, St. Louis, for respondent/appellant/cross-respondent.

Richard H. Edwards, Michael Robert Young, Clayton, for petitioner/respondent/cross-appellant.

KAROHL, Presiding Judge.

Husband appeals decree of dissolution entered below by the Circuit Court of St. Louis County which dissolved the marriage, divided the marital property, awarded custody to wife of three of the parties' four minor children and granted wife periodic maintenance. Wife cross-appeals claiming an abuse of discretion in failing to award her an interest in one item of marital property. We affirm the judgment as here modified.

Husband and wife were married in Philadelphia, Pennsylvania on December 30, 196i. They have four children: Elizabeth, born October 5, 1968; Patricia Reilly, born September 30, 1970; Alison, born January 3, 1974; and John, born July 2, 1976.

Wife was 39 years old at the time of trial. She completed three years of college before her marriage and had no work experience or employment skills other than three months of work during marriage as a retail sales clerk. Husband was 42 years old at the time of trial and is President and Chief Executive Officer of Lark Refrigeration Company (Lark). Lark is a closely held wholesale refrigeration company formed in 1977. Husband, his brother, his father and a third party shared the initial stock and contributed necessary capital for Lark's formation. As of trial, husband owned his initial 500 shares, his father owned 500 shares, and 1,000 shares were held jointly by his brother, sister-in-law and their children.

The issues on appeal require a detailed review of the parties' financial status. The record reveals a couple who admittedly lived beyond their means. As of trial, the parties jointly owned a home they valued at $400,000. They were jointly liable on a purchase money note to Centerre Bank secured by a first deed of trust on their home. The balance remaining was $170,658.05 and the monthly payments approximated $1,500.

The parties were also jointly liable on a note for $90,000 to St. Louis County National Bank, secured by a second deed of trust on their home. They had borrowed this money to secure new financing for Lark because Boatmen's Bank had previously loaned money to Lark and had called its loan. Lark sought new financing from a different lender, First Wisconsin Financial Corporation (First Wisconsin), and husband loaned Lark $70,000 of the total $90,000 note to cover the called Boatmen's Bank loan and to secure new financing from First Wisconsin. The parties used the remaining $20,000 to install a new kitchen in their home. The balance remaining was $80,400. The monthly payment of $1,125 was paid by husband at $300.00 per month and by Lark, Inc., which paid the balance.

The parties were also obligated on a note to Brentwood Bank. They used this loan for living expenses. The balance outstanding was $150,000 and their monthly obligation was approximately $1,600 although it could vary with interest rates. This loan was originally secured by stock pledged by husband's aunt and father. Brentwood Bank had called the loan and ordered the sale of $100,000 worth of collateral. Husband then executed a note to his aunt for $50,000 and a note to his father for $49,000 which represented their stock losses from the forced sale of the collateral by Brentwood Bank. The record shows that Lark had been making the monthly payments to Brentwood Bank for the parties during 1984. Lark had, however, been deducting $328 each month from husband's paycheck to pay to his father the interest lost on the liquidated securities. Husband had not, as of trial, paid any interest to his aunt under the note in more than a year and had never repaid her any principal.

Husband also owes $123,436.75 to Lark. This money represents loans, or "salary advances" as found by the trial court. Long after this money was obtained, husband signed a note for $67,697.04 which represented a portion of his total debt. Husband was required under the note to gain permission from various Lark officers before getting more money, but obtained additional money after executing this note without complying with its terms. Although permitted under the note, Lark had not withheld any money from husband's paycheck to repay this amount. Lark owed husband and wife $107,000 for loaned money. This included $37,000 plus the $70,000 balance received on the St. Louis County second deed of Trust loan. This $107,000 asset is the subject of wife's cross-appeal.

In 1981, First Wisconsin advised Lark that it would not continue its financing unless husband repaid his $123,400 debt to the company by July 31, 1985. As additional lending conditions, First Wisconsin also froze husband's salary at $80,000 and prohibited Lark from loaning or advancing husband additional amounts over his salary as it had done in the past. The record does show, however, that Lark paid all hus-

band's travel expenses as well as providing other benefits such as insurance and a car for a nominal monthly fee.

Husband was jointly liable with his brother under a note to Centerre for $92,000. This money was used to provide additional capital for Lark required by First Wisconsin when it became Lark's new lender. Lark has made all payments on this loan.

Husband is individually liable on a note for $16,000 payable to St. Louis County National Bank. This money was used to cover husband's expenses after the parties separated. His monthly payment on this debt is $182. Finally, husband has a 1984 tax liability for $10,000 for failing to pay withholding and he owes $8,500 in attorney fees.

Husband and wife also possess assets. They have the family home valued at $400,000. Lark owes husband $107,000 and a portion of this ($70,000) is reflected by a Lark note issued when husband loaned Lark this sum taken from his $90,000 second mortgage. Lark makes a monthly payment on this obligation by a payment to the St. Louis County National Bank in partial payment on the parties' second deed of trust house loan. Home furnishings were valued at $7,500. The parties had a checking account of approximately $2,000 and husband has Lark stock he values at $50,000. The trial court found this stock to be worth $60,000.

After trial, the court found *inter alia* the following:

1) For years 1983 and 1984, husband earned a gross salary of $80,000.

2) Between January 1, 1985 and April 15, 1985, husband earned a gross salary of $23,331.31.

3) That husband had received loans from Lark during that same period totalling $123,000 and there had been no payments or collateral on this debt.

4) That Lark had paid on behalf of husband principal and interest on sums borrowed by him and loaned to Lark despite the fact that he had not repaid any money borrowed from Lark.

5) Lark had continued to pay husband's personal bills.

6) Lark provided husband with an American Express credit card on which he charged travel, meals and accommodations, and Lark reimbursed him for expenses incurred during business travel, including personal meals.

7) The parties had assets totalling $549,308, which included 500 shares in Lark Refrigeration valued at $60,000, $107,000 for loans due from Lark and $400,000 as the value of the parties' property on Kent Road.

8) The parties "possessed" debts totalling $318,133.13. Not included are the note for $90,000 secured by the second mortgage, the $123,436.75 owed to Lark Refrigeration, the $46,057.85 due to Centerre Bank, the $50,000 owed to Respondent's aunt or the $49,000 owed to Respondent's father.[1]

The court ordered that wife have custody of the three youngest children, ages 10, 12 and 16. The court awarded custody of the 18 year old to husband. Husband was ordered to pay $750 each month as child support for each of the three children awarded to wife and $750 each month as permanent maintenance to wife. The total monthly obligation is $3,000. The parties were to sell their home and devote sale proceeds to satisfy the first and second

---

**1.** These loans were excluded because the trial court stated, in its conclusions of law, that husband had failed to show that the sum owed to Lark was a loan because he had made no repayment and had pledged no collateral. Further, the money due for the second mortgage and $46,057.85 owed to Centerre Bank are obligations of Lark because the corporation made all payments. Finally, husband failed to show that the money owed to his aunt and father were "loans" because he had no adequate evidence that he was required to pay these amounts. The trial court is at liberty to believe or disbelieve husband's evidence establishing his true indebtedness. *Bland v. Bland,* 652 S.W.2d 690, 692 (Mo.App. 1983). Based on this evidence, we cannot say the trial court's conclusions are unjustified.

mortgages[2] with 45% of remaining net proceeds to go to husband and 55% to wife. Husband was to pay wife $27,500 for her interest in 500 shares of Lark stock. Husband was awarded these shares which represented 25% of the company. Husband also received the $107,000 value of the loan made to Lark.

The court also divided the debts between the parties. Wife must indemnify husband against the $17,500 debt owed her mother, Mary Reilly, incurred after separation when her mother bought wife a new home. Husband must indemnify wife against the following:

| | | |
|---|---|---|
| 1) | Brentwood Bank loan | $150,075.08[used for living expenses] |
| 2) | Centerre Bank | 46,057.85[joint with brother] |
| 3) | St. Louis County Bank | 16,000.00[his separate living expense] |
| 4) | Frances Levis | 50,600.00[repay collateral losses] |
| 5) | Frederick Levis | 49,000.00[repay collateral losses] |
| 6) | Car lease and charge accounts | 13,000.00 |
| 7) | IRS | 10,000.00 |
| 8) | Childrens' psychologist and counseling bills @ | 3,500.00 |

Finally, husband was ordered to pay wife's attorney fees and costs of $13,504.25.

Husband claims the trial court abused its discretion in three respects. First, the allocation of debts and division of property were not equitable between the parties. Second, the child support award was erroneous as evidence showed the children had been supported on substantially less than $750 per child each month, wife's evidence of need was based on an inflated lifestyle and such payments would leave husband without enough money to meet his own needs and obligations. Finally, husband avers he is unable to pay wife's attorney fees in light of his other debts. We address these points in order.

The judgment of the trial court should be set aside if there is no substantial evidence to support it, if it is against the weight of the evidence, or if it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Further, the trial court has broad discretion in dividing the property in a dissolution action. *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 64 (Mo. banc 1983). The court must consider all relevant factors, including those listed in § 452.330 RSMo Cum.Supp.1982, so as to distribute the marital property in a fair and equitable fashion. *Steinmeyer v. Steinmeyer,* 669 S.W.2d 65, 68 (Mo.App.1984) and *In re Marriage of Hedrick,* 659 S.W.2d 352, 353 (Mo.App.1983). The determination of who will be responsible for debts incurred during the marriage is a factor the trial court is to consider in seeking a fair division of marital property. *In re Marriage of Kluba,* 647 S.W.2d 920, 921 (Mo.App.1983).

We find no abuse of discretion in the trial court's division of marital property and debt. Wife has no income and no demonstrated work skills. Her education is limited and she has custody of three minor children. Further, husband earns $80,000 each year and has spent far in excess of his salary on many things including vacations and gifts to other women. He lived lavishly both at home and on business. The exact income and benefits for husband as the president of Lark, a close corporation, is not precisely measurable but it has exceeded the stated salary. These are factors the trial court did and should consider. The evidence supports a conclusion that wife is presently unable to repay any part of the large debts incurred during the marriage. Finally, husband agreed at trial to assume the very debts of which he complains. He agreed to take responsibility for the notes to his aunt and father, the $16,000 debt to St. Louis County Bank, the $10,000 IRS obligation, the $13,000 debt for charges and the car lease, the

---

**2.** The house was sold for approximately $520,000 and the money was adequate to satisfy both mortgages. The record does not show how much net proceeds, if anything, the parties received because the sale occurred after trial.

$150,000 obligation to Brentwood Bank on behalf of Lark and the $46,057 debt to Centerre (which evidence shows Lark pays anyway). He accepted these debts and recognized that he would also be paying child support. In addition, the house loans were paid in the sale and the sale realized substantially more than was anticipated. Husband's point is denied.

As to the child support awarded below, we modify the order to better reflect wife's statement of expenses and husband's ability to pay. After the property and debts are divided, husband's monthly obligations would be as follows:[3]

| | | |
|---|---|---|
| | Net Monthly Salary | $4,400 |
| | Less: | |
| 1. | Brentwood Bank | 1,600 |
| 2. | St. Louis County Bank | 182 |
| 3. | Frederick Levis | 328 |
| | | 2,290 |
| | Less: ordered child support | 2,250 |
| | | $ 40 |

The $40 remaining is clearly inadequate to meet husband's other debts, his needs and the needs of the daughter in his custody.

■ Wife's own income and expense statement, a trial exhibit below, supports a modification in that she lists each child's monthly needs at approximately $470. This sum does not include proportionate allowances for such expenses for the children as housing and utilities, but her expenses there listed reflect her costs of living in the original family home now sold. Wife and her three children now live in a home purchased by wife's mother, who expects future repayment but receives no money at present. There is nothing in the record showing her living expenses in this new house. The record does show, however, that husband had paid $1,500 each month to wife and the three children under a PDL order prior to this decree. Wife testified that this sum was inadequate to meet their minimal needs and did not support them in the lifestyle which husband's salary would permit. Thus, it appears that the children are entitled to more than the PDL-ordered sum of $375 per child each

month but that husband cannot afford $750. The award would prevent husband from providing an equal sum for the child in his custody. We modify the support of $750 to $550 per child per month to better reflect husband's ability to pay and the documented needs of the children. Rule 84.14. *Trunko v. Trunko*, 642 S.W.2d 673, 676 (Mo.App.1982). Such a modification will leave husband with $640 each month to meet his debts, his expenses and those of the child in his custody. This sum may also be insufficient on its face, however, there remains the other benefits of husband's employment position to fill the gap.

■ Husband finally claims an abuse of discretion in ordering him to pay wife's attorney fees and costs. We find no abuse of discretion under these circumstances. *Reynolds v. Reynolds*, 681 S.W.2d 522, 525 (Mo.App.1984).

■ Wife cross-appeals claiming that the trial court erred in failing to award her a part of the $107,000 owed to the parties from their loan to Lark. She contends that Lark will now owe $70,000 of this sum to husband because the court ordered the proceeds of the sale of the family home to pay the second deed of trust and this loan from St. Louis County National bank was the source of the funds loaned to Lark. We find no abuse of discretion. *Colabianchi*, 646 S.W.2d at 64. Lark, Inc. would be entitled to offset this corporate debt against husband's debt to Lark for $123,436. The net difference, as an asset of Lark, was presumably a factor in valuing Lark stock and the trial court provided wife with an award of $27,500 for her interest in the Lark, Inc. stock.

We affirm the judgment in all respects except by modifying the award of child support to wife from $750 per month per child to $550 per month per child.

SIMON and GARY M. GAERTNER, JJ., concur.

---

3. Wife has since remarried and husband is no longer obligated for her monthly maintenance of $750. We, however, review the judgment on the record at the time of the decree.