Weldon Wayne CORBETT, Respondent,

v.

Gloria Ann CORBETT, Appellant.

No. WD 37722.

Missouri Court of Appeals,
Western District.

Feb. 10, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 31, 1987.

Application to Transfer Denied
May 19, 1987.

Bruce A. Bailey, Warrensburg, for appellant.

Kevin Schehr, Versailles, for respondent.

Before CLARK, P.J., and NUGENT and LOWENSTEIN, JJ.

NUGENT, Judge.

Gloria Ann Corbett appeals from the property disposition portion of the 1985 judgment dissolving her thirty-one year marriage to Weldon Wayne Corbett. She claims that the trial court erred when it set aside as her husband's separate property a $20,000 N.O.W. account and $15,000 in cash derived from his inheritance because those sums had been transmuted into marital property by commingling. She also says that the trial court improperly failed to require that the sum of $50,000 awarded to her in lieu of marital property bear interest, thus giving Wayne the use of her property over the term of the installment schedule without compensating her for that use.

Confining our review to the standards for court-tried cases of an equitable nature set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976) (en banc), we affirm the judgment of the trial court.

Gloria and Wayne Corbett were married in 1954. Mr. Corbett made his living by farming and raising cattle, but at times supplemented his income with construction work and other jobs. Until the parties separated in 1984, Mrs. Corbett had never been employed outside the home. As well as running the home and rearing the couple's four children, she assisted in the day to day operations of the farm and sometimes managed the farm by herself when Mr. Corbett took seasonal employment out of town.

According to her testimony, the marriage was stormy from the start. Mr. Corbett's extreme efforts to prevent her from visiting her parents who lived nearby and his dictatorial and sometimes violent manner of dealing with her and the children were recurrent themes of discord throughout the marriage. Some thirty years later, after

the four children had become emancipated and self-supporting, Mrs. Corbett moved out.

Mrs. Corbett contends that the dissolution decree mischaracterizes $35,000 as her husband's separate property when in fact the funds had been commingled with marital property and had become marital property by transmutation.

In 1974, Mr. Corbett inherited $28,790.55 from his mother's estate and a one-eighth interest in lands that belonged to his father, valued at from $8,000 to $10,000.[1] He invested the monies in certificates of deposit at various savings associations, from time to time transferring his money from one association to another to take advantage of the best interest rate. He voiced an intent to keep the funds separate and took certain measures to segregate his money from the family funds. He testified that his wife was not with him when he opened the accounts, and that the C.D.'s were registered either in his name alone or in his name as trustee for his children, but not in joint tenancy with her. He stated that at all times, he maintained possession and control of the certificates and passbooks of the numerous accounts; neither Mrs. Corbett nor the children had access to the accounts. On the other hand, she testified that she accompanied Mr. Corbett when he opened some accounts and at some time her name appeared on certain certificates, but that after a family argument he ordered her to sign papers that removed her name from the accounts. She also stated that her husband had a daughter's name removed from one of the accounts under similar circumstances.

Mr. Corbett testified that the interest earned by the inherited funds was sometimes left to accumulate in the accounts and sometimes spent for family purposes. About $5,000 of the interest earned was used to finance the family's vacation in Germany. Mrs. Corbett testified that her husband permitted use of the inheritance money or earned interest for family purposes upon the strict understanding that his private accounts must be reimbursed. The money used for the trip to Germany was repaid. Over the years, all of the interest on certificates of deposit was attributed to Mr. Corbett on his IRS Form 1099 and taxed on their joint income tax return.

Robert L. Palmer, vice-president and secretary of Metropolitan Savings Association, testified that Mr. Corbett opened several C.D. accounts at Metropolitan, including two accounts registered in the names of Weldon Wayne Corbett or Gloria A. Corbett as joint tenants with right of survivorship. The first joint tenancy account, in the amount of $2,039.12, was opened May 31, 1975. A second account so registered was opened June 1, 1976, in the amount of $2,032.76. Mr. Palmer's testimony and business records do not establish when the joint tenancies in the two accounts were terminated. The remaining accounts were held by Wayne Corbett either in joint tenancy with or in trust for his children. When asked whether the interest earned on the accounts was paid to the holder by check or reinvested into the accounts, Mr. Palmer consulted a ledger and replied that the interest was reinvested into the accounts. He further related that on May 30, 1981, Wayne Corbett consolidated the C.D.'s, presumably all of them, into one certificate registered solely in his name in the amount of $22,228.81. On November 28, 1981, he withdrew that certificate from the savings association.

Mr. Corbett testified that at the time of trial the remainder of the inherited sums plus the accrued interest and minus what he had spent over the years amounted to $35,000.[2] Distraught after his wife left, he

1. References to this inheritance will include both the money inherited from his mother and his interest in the land from his father's estate.

2. He failed to report the existence of the $20,000 N.O.W. account and the $15,000 in cash which constitute the remainder of his inherited monies in his sworn statement of property on the mis-

taken belief that he was not obligated to list what he deemed to be non-marital property. The schedule was amended at trial to include those funds.

cashed in all of his certificates of deposit in May, 1984, and placed the entire $35,000 in cash inside a paper bag and hid it in the back bedroom of his house.

In the decree of dissolution the trial court distributed a $20,000 N.O.W. account on deposit at Third National Bank in Sedalia and $15,000 in cash to Mr. Corbett as non-marital property and gave him all the marital property in kind, including the farm, farm equipment and livestock, the lake property, a lot in Florida, cemetery plots, motor vehicles, and other items of personalty. The court specifically found $6,210.45 of the certificates of deposit claimed by Mr. Corbett to be marital property. The court also ordered Wayne Corbett to pay Gloria Corbett $100 per month for maintenance and to pay the couple's marital debts. Court costs were assessed against Mrs. Corbett.

In further division of the marital property, the court ordered Mr. Corbett to pay Mrs. Corbett $50,000 by installments as follows:

> $5,000.00 on or before January 1, 1986.
> $20,000.00 on or before July 1, 1986.
> $20,000.00 on or before January 1, 1987.
> $5,000.00 on or before January 1, 1988.
> Should any installment not be paid on the date ordered, then that installment is to bear interest at the rate of ten percent from the date when due, until paid. No interest is to accumulate on an installment, until that installment is due. Petitioner wife is granted lien on Respondent Husband's realty until these installments are paid. . . .

### I.

Did the trial court err in declaring the $20,000 N.O.W. account and the $15,000 in cash, the $35,000 residue of the inherited funds, the husband's separate property? To answer this question, we turn first to the Dissolution of Marriage Act for guidance.

Section 452.330.1[3] requires the court to set apart to each spouse his or her property and to divide the marital property in such proportions as the court deems just. "Marital property" is defined in § 452.330.2 as "all property acquired by either spouse subsequent to the marriage." Listed then are exceptions to the definition. "Property acquired by gift, bequest, devise, or descent" and "[p]roperty acquired . . . in exchange for property acquired by gift, bequest, devise, or descent" are the relevant exceptions here. § 452.330.2(1) and (2). Finally, § 452.330.3 creates a statutory presumption that all property acquired by either spouse after the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether it is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property.

Here the burden is on the husband to overcome the statutory presumption of marital property by a showing that the property was acquired by a method listed as an exception to the definition of marital property in § 452.330.2. The parties do not dispute that the $35,000 set aside as his separate property constitutes the remainder of money inherited from his mother and his interest in lands from his father's estate. Nevertheless, Mrs. Corbett's claim that the inherited monies were transmuted[4] into marital property by commingling requires a second level analysis. The decisive issue becomes whether substantial evidence was presented to show her husband's clear intent to contribute his separate property to the marital estate. *Busby v. Busby*, 669 S.W.2d 597, 599–600 (Mo.App.1984).

---

**3.** All sectional references are to Revised Statutes of Missouri, 1978, as amended.

**4.** "'Transmutation' is a principle derived from community property law which recognizes that the character of property as separate or marital can be changed by the intent of the parties. Consequently, if the requisite intent is established it overrides any other means of classifying the property and avoids the problem of how to classify property acquired by a blend of separate and marital elements." Krauskopf, *The Transmutation and Source of Funds Rules in Division of Marital Property,* 50 Mo.L.Rev. 759, 761 (1985).

In *Cartwright v. Cartwright*, 707 S.W.2d 469, 472–73 (Mo.App.1986), the Eastern District of this court addressed two bases to support a finding that separate property has become marital property by transmutation. The first involves reinvesting the separate principal with earned interest to acquire new assets. The second considers the legal effect of placing separate property in joint tenancy with a spouse.

On facts closely resembling these, the Eastern District held that, by reinvesting the interest earned on a certificate of deposit purchased with funds she had inherited, the wife had commingled separate property with marital property. The earned interest was marital property because, although the product of separate property, it was income acquired after the marriage. Such commingling may indicate an intent on the part of the owning spouse to contribute his or her separate property to the marital estate. *Id.* at 472, citing *Trapani v. Trapani*, 684 S.W.2d 500, 503 (Mo.App. 1984). The court held that "[b]y failing to sufficiently segregate her own property, wife indicated an intent to contribute that property to the marital estate, thereby transmuting that property into marital property." Therefore, the trial court did not abuse its discretion in declaring that the stocks purchased with the commingled funds were received in exchange for marital property and were themselves marital in nature. *Id.* at 472. *See Bennett v. Bennett*, 706 S.W.2d 260, 262 (Mo.App. 1986); *also Wilhelm v. Wilhelm*, 688 S.W.2d 381, 383 (Mo.App.1985); *Bashore v. Bashore*, 685 S.W.2d 579, 582–83 (Mo.App. 1985); and *Jaeger v. Jaeger*, 547 S.W.2d 207, 211 (Mo.App.1977).

Regarding the effect of joint titling, *Cartwright* held that using separate property to purchase joint certificates of deposit raises a presumption that the separate property has become marital property. 707 S.W.2d at 473, citing *Boone v. Boone*, 637 S.W.2d 249, 250 (Mo.App.1982), and *Dunsford v. Dunsford*, 671 S.W.2d 282, 283 (Mo. App.1983). That presumption may be rebutted by clear and convincing evidence to the contrary. 707 S.W.2d at 473, citing *Layton v. Layton*, 673 S.W.2d 462, 464 (Mo.App.1984). *See also Conrad v. Bowers*, 533 S.W.2d 614, 621–22 (Mo.App.1975). In *Cartwright*, the wife sought to rebut the presumption with evidence that she transferred the proceeds of the joint certificates to her separately held money market account. The court held that evidence insufficient to overcome the presumption, given that the funds were held jointly for several years and the interest was used for household expenses.

The record in this case contains evidence upon the basis of which a trial judge could have found that Mr. Corbett's separate property had been transmuted into marital property on either or both grounds set forth in the *Cartwright* case. He admitted that he sometimes allowed the interest to accumulate in the accounts and that he reinvested both the interest and the principal in other certificates. Mr. Palmer testified that Wayne Corbett reinvested both interest and principal in his Metropolitan accounts and that his smaller accounts were consolidated in 1981 to purchase a single certificate of deposit in the amount of $22,228.81.

Applying the rule in *Cartwright*, the trial court could have found that Mr. Corbett indicated his intent to contribute his entire inheritance to the marital estate by his failure to segregate the interest from the principal when he reinvested the commingled sums to acquire a new asset.[5]

---

5. The several decisions in which the courts have refused to find the intent to transmute separate property into marital property and upon which Mr. Corbett relies are factually distinguishable from the present case. *In re Marriage of Pate*, 591 S.W.2d 384, 390 (Mo.App.1979), does not address the problem of reinvesting interest with principal derived from separate property to acquire new assets. More importantly, Dr. Pate never placed the checking account or the C.D.'s in joint tenancy with his wife. *Cf. Sturgis v. Sturgis*, 663 S.W.2d 375, 379–80 (Mo.App.1983).

Likewise, the court in *Busby v. Busby*, 669 S.W.2d 597, 600 (Mo.App.1984), emphasized that the fact that the farm remained titled solely in the husband's name throughout the marriage was the deciding factor in its analysis of the parties' intent.

■ Nevertheless, the trial court must also consider whether the presumption that arises from placing separate funds in joint tenancy has been rebutted by clear and convincing evidence. The evidence in this case is quite clear that over the years Mr. Corbett tightly controlled his separate property and, except for a small part, kept it in his own name or restored it to his own name. From that evidence the trial judge could readily perceive Mr. Corbett's intent to retain the bulk of his inheritance as his own and not to commingle it in such a way as to transmute the whole of the estate to marital property. Whether this intent not to commingle was sufficient to rebut the presumption was in the first place for the trial court, given the evidence of Mr. Corbett's tight control and insistence upon reimbursement to the fund. We cannot say in this case that the evidence was insufficient to support rebuttal of the presumption.

## II.

Mrs. Corbett claims that, absent a showing of economic hardship to justify its ruling, the trial court abused its discretion by failing to require interest on the $50,000 awarded to her in lieu of marital property. She argues that the trial court's judgment wrongfully allows Wayne Corbett to use her property for the two-year payment period without compensating her for its use.

Mrs. Corbett cites *In re Marriage of Paul*, 704 S.W.2d 278, 279 (Mo.App.1986), to support her position. There, the reviewing court held that, in view of the twelve-year payment period, the trial court should have awarded interest on the $90,000 property equalization award at the statutory rate. Under the circumstances presented in *Paul*, the court saw "no reason" for giving the husband the use of the wife's assets without paying for that use. The *Paul* court acknowledged, however, that some situations may not require the award of interest as in *Geil v. Geil*, 647 S.W.2d 161, 162 (Mo.App.1983), and *Beckman v.*

*Beckman*, 545 S.W.2d 300, 301–02 (Mo. App.1976).

The trial court's decision not to require payment of interest was affirmed in both *Geil* and *Beckman* despite factual differences. In *Geil*, the $13,230.50 award was payable over a four-year period. In *Beckman*, the court refused to require interest in a situation more like that in *Paul*, upon which Mrs. Corbett relies: the award totaled $124,000 and the installment schedule spanned ten years. What distinguishes these cases from *Paul* is the reviewing court's deference to the trial judge's discretion to consider the economic circumstances of each spouse in dividing the marital property under the Dissolution of Marriage Act.

■ If the reviewing court finds that the trial judge was faced with a choice between alternative legal rules, none of which would yield a result contrary to law, the judgment of the trial court will be affirmed, regardless of which choice the court made. *In re George*, 630 S.W.2d 614, 622 (Mo.App.1982).

■ Here, the trial judge was faced with a choice between two statutes which, at least in this context, are in conflict. On one hand, § 408.040 provides that interest shall be allowed on all money judgments. On the other hand, § 452.330.1(3) gives the court broad discretion to divide the marital property as it deems just after considering all relevant factors, including "[t]he economic circumstances of the parties at the time the division of property is to become effective." Neither statute requires a judge to impose interest on a property equalization award when neither party demonstrates economic hardship. Instead, the question of interest is left to the discretion of the trial court.

■ In the present case, the record supports our conclusion that the trial court properly considered all relevant factors, such as the gross amount awarded, the time period over which it is to be paid and the relative economic circumstances of the parties. The trial court did not abuse its

Unlike the case before us, *Frerichs v. Frerichs*, 704 S.W.2d 258, 262 (Mo.App.1986), presents a transitory mingling of funds for a single transaction: the husband briefly funneled the exact purchase price from his separate funds into the marital checking account for the limited purpose of buying two horses.

discretion in choosing not to require interest in this case.

Accordingly, we affirm the judgment of the trial court.

All concur.