**In re the MARRIAGE OF Lester Franklin Swanson and Donna Marie SWANSON.**

**Lester Franklin SWANSON, Respondent,**

v.

**Donna Marie SWANSON, Appellant.**

**No. 19430.**

Missouri Court of Appeals, Southern District.

Aug. 15, 1995.

Daniel H. Bowers, Thayer, Bernstein & Bass, P.C., Kansas City, for appellant.

Nancy A. Beardsley, Cochran, Oswald, McDonald, Roam & Moore, P.C., Blue Springs, for respondent.

CROW, Judge.

By its second amended decree of dissolution of marriage, the trial court dissolved the 13–year marriage of Lester Franklin Swanson ("Frank") and Donna Marie Swanson ("Donna").[1] The decree awarded Donna primary physical custody of the parties' only child, a son born April 11, 1981, and awarded Frank specific periods of temporary custody. The decree ordered Frank to pay Donna child support of $1,600 per month and provide health care insurance for the child. None of the items mentioned in this paragraph are in dispute.

Donna appeals, claiming the trial court erred in denying her prayer for maintenance, dividing the marital property, failing to award her the full amount of her attorney's

fee, and finding the marriage occurred December 21, 1980, instead of September 21, 1980.

■ The scope of our review is set forth in *Mehra v. Mehra*, 819 S.W.2d 351, 353[1] (Mo. banc 1991). We must affirm the decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. We defer to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Id.* at 353[2].

At time of trial,[2] Frank was 46, Donna 37. They married September 21, 1980.

They had few assets when they wed, but their financial situation began improving rapidly when they, together with two other investors, formed a Missouri corporation, National Quick Weight Loss Centers, Inc. ("NQWLC") in 1988. Describing NQWLC, Frank explained, "It's a weight loss counseling business, where we provide professionals to provide individual counseling for weight control."

NQWLC commenced business in Kansas City, and by October, 1991, had six "clinics" there with "some 35, 40 employees." At that time, Frank owned 25 percent of the shares of NQWLC, Donna owned 25 percent, and the other two investors owned 25 percent each.

Both Frank and Donna worked for NQWLC. In 1990, the year before they separated, their tax return showed joint income of $149,094. It consisted of their salaries and profit distributions—NQWLC is "an S corporation." In 1991, their tax return showed combined income of $141,841.

Before the separation, the parties resided in an apartment in Merriam, Kansas, leased by NQWLC. Donna departed with the parties' son and moved to Florida in the summer of 1991.

1. In the trial court, Lester Franklin Swanson referred to his wife, Donna Marie Swanson, as "Donna." She referred to him as "Frank." For brevity and clarity, we use those names in this opinion. We mean no disrespect.

2. The case was tried piecemeal on five days beginning August 31, 1993, and ending October 20, 1993.

At time of trial, Donna and Frank still owned their respective 25 percent interests in NQWLC. The other two original shareholders had sold their shares to another investor. Frank was still working for NQWLC. He testified his "monthly income" was $12,417. Donna was employed as a "part-time person" at a women's clothing store in Florida at $6.25 per hour.

The trial court awarded Donna marital property valued by the court, in the aggregate, at $79,028. The two largest items were a $22,000 "IRA" and $32,850 cash. The latter amount was half the proceeds from the sale of some marital property while the case awaited trial.

One item of marital property awarded Donna was a 1993 Ford automobile, valued by the trial court at $13,500. Donna's second point, addressed *infra*, complains that amount is too high. Donna does not dispute any other value assigned by the trial court to any item of property.

The trial court valued the parties' combined ownership interest in NQWLC (50 percent of the shares) at $220,000 and awarded all the parties' shares to Frank.

The trial court awarded Frank other marital property with an aggregate value of $94,668. To "equitably adjust the division of marital assets," the trial court ordered Frank to pay Donna $118,000 as follows: $29,500 immediately; $29,500 within 90 days after the decree; $29,500 within 180 days after the decree; $29,500 within 270 days after the decree.

The trial court held Donna did not meet "the threshold requirements for maintenance" in § 452.335, RSMo Cum.Supp.1993, in that she is able to support herself through appropriate employment. The decree states:

"[Donna] worked full time throughout the marriage. Her health is good. She is skilled as a salesperson, and is capable of earning a substantial income. [Donna] has made limited efforts to seek employment since separation. The Court does not find [Donna's] evidence credible regarding her efforts to seek employment.... The Court further finds that the claimed monthly expenses of [Donna] to be over

exaggerated and unreliable, and not an aid to the Court. In addition, [Donna] has income producing property to assist her in providing for her reasonable needs, as well as a liberal amount of child support paid to her, which exceeds the child support guidelines and which pays in part a portion of the total fixed expenses of wife and child."

■ Donna's first point charges the trial court with error in denying maintenance. Donna claims the evidence demonstrated she and Frank lived in "relative opulence" (a "fashionably-appointed 3–level townhome," designer clothing, furs, expensive jewelry, travel, dining in fine restaurants, a Florida condominium, and a "42 foot yacht" leased by NQWLC). Citing *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App.1977), Donna asserts the standard of living established during the marriage is frequently the best evidence of what the parties have together determined their reasonable needs to be.

However, *Brueggemann* explains that "reasonable needs," as used in § 452.335, is a relative term and does not automatically equal the standard of living established during the marriage. *Id.* at 857. Furthermore, *Brueggemann* differs factually from the instant case in that the wife in *Brueggemann* stayed home raising the parties' three children for most of the 31–year marriage, *id.* at 855, thereby forgoing the opportunity to develop a career or acquire job experience. *Id.* at 857.

Frank reminds us that a trial court may award maintenance only if it finds the spouse seeking maintenance lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs and is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be employed outside the home. § 452.335.1; *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 953[36] (Mo.App.E.D.1993); *Wallace v. Wallace*, 839 S.W.2d 354, 356–57[4, 5] (Mo.App.W.D.1992). Frank points out that Donna is experienced in the weight loss industry in that she managed individual clinics, was an area supervisor over multiple clinics, and trained staff

personnel. Consequently, says Frank, Donna is capable of earning a substantial income in that industry.

Vahna Jean Benedict,[3] the "area director and vice-president" of NQWLC at time of trial, testified she began working for NQWLC in 1989. She oversees the company's seven clinics. Benedict avowed Donna performed "the same type of services" for NQWLC that Benedict now performs, except Donna had more duties. The year before trial, Benedict earned $58,000 at NQWLC.

Donna replies she can no longer earn what she once did in the weight loss industry because of its "unique and fraternal nature." She avers Frank has friends in the industry around the country but she does not, hence she has no future in the industry.

The trial court was not required to believe Donna's testimony. The trial court was free to believe or disbelieve all, part or none of the testimony of any witness. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[1] (Mo. banc 1989). The trial court evidently found Donna's testimony unconvincing. As we have seen, the trial court held Donna is capable of earning a substantial income.

We hold that finding is supported by substantial evidence and is not against the weight of the evidence. Donna's contention to the contrary is merely a cleverly camouflaged invitation to us to make our own determination on credibility of the witnesses. We do not substitute our judgment for that of the trial court on credibility issues. *In re Marriage of Pfeifer*, 862 S.W.2d 926, 930–31[8] (Mo.App.S.D.1993).

The trial court also found Donna had "income producing property" to assist her in providing for her reasonable needs. We infer the trial court meant the $172,850 cash awarded Donna as marital property.[4]

In determining whether Donna needed maintenance to meet her reasonable needs, it was proper for the trial court to consider the amount Donna could earn by investing the funds referred to in the preceding paragraph. *In re Marriage of Johnson*, 856 S.W.2d 921, 927 (Mo.App.S.D.1993). In saying this, we are mindful Donna was not required to invade the principal. *See: Butler v. Butler*, 870 S.W.2d 953, 955 (Mo.App. E.D.1994).

The trial court obviously concluded Donna could provide for her reasonable needs through appropriate employment and investment income from marital property apportioned to her. We hold that finding is supported by substantial evidence and is not against the weight of the evidence. Consequently, the denial of maintenance was not error. *Ottmann v. Ottmann*, 829 S.W.2d 644, 647 (Mo.App.W.D.1992); *McDonough v. McDonough*, 762 S.W.2d 827, 830 (Mo.App. E.D.1988).

The only feature of the trial court's decision regarding maintenance that leaves us uneasy is the trial court's assumption that Frank would pay the $118,000 as ordered within 270 days after the decree. The decree did not provide any method of securing payment. Frank was awarded no real estate upon which the decree could place a $118,000 lien in favor of Donna. If Donna did not receive the $118,000, one of the factors on which the trial court based the denial of maintenance would vanish. Therefore, Donna might have argued the trial court should have awarded her monthly maintenance in an amount equal to the sum she could earn on the $118,000. Once Frank paid the $118,000, he could move the trial court to terminate maintenance.

However, Donna does not assert the trial court should have done this. Her brief was filed some two months after the final installment was due from Frank. No complaint of nonpayment appears in Donna's brief, and her lawyer said nothing during oral argument indicating any part of the $118,000 had not been paid. Consequently, we leave the decree's denial of maintenance undisturbed. Donna's first point is denied.

3. Her first name is spelled "Vonna" in the transcript. Frank's brief says the correct spelling is "Vahna."

4. The $22,000 "IRA," the $32,850 from the sale of certain marital property, and the $118,000 Frank was ordered to pay.

■ Her second point, as noted earlier, complains about the trial court's $13,500 valuation of a 1993 Ford automobile awarded her as marital property. Donna maintains the trial court failed to consider a $10,000 debt on the Ford; consequently, the value should be reduced to $3,500. Donna reasons that inasmuch as the trial court attempted to divide the marital property evenly, she should receive "the additional sum of $5,000, which would again bring the property division back into balance."

Donna testified she bought the Ford "brand new" a "couple months" before trial.[5] According to her, she traded in a 1989 Mercury Cougar, for which the dealer allowed "somewhere around $4,500, $4,700." Asked what the "sticker price" of the Ford was, Donna replied, "I don't have any idea." However, she recounted she made a cash payment of "somewhere around $1,500" and borrowed "approximately $10,000." Therefore, she concluded the price of the Ford was "about $16,000."

Frank testified the value of the Cougar was $8,625, almost twice what Donna said she received as a trade-in allowance. Frank points out Donna presented no documentary evidence to confirm her testimony about the $10,000 loan. Frank argues that the trial court did not overlook the alleged debt on the Ford, but "simply didn't believe [Donna's] evidence."

■ The burden is on Donna, the appealing party, to demonstrate error. *State ex inf. Ashcroft, ex rel. Plaza Properties, Inc. v. City of Kansas City,* 687 S.W.2d 875, 876[2] (Mo. banc 1985). The trial court was not compelled to believe Donna's testimony about the existence or amount of the alleged debt. *T.B.G.,* 772 S.W.2d at 654[1]. A trial court may disregard even uncontradicted testimony. *Mehra,* 819 S.W.2d at 357[17].

Mindful of the trial court's prerogative to assess credibility, we hold the inconclusive evidence regarding the Ford and the alleged debt is insufficient to convict the trial court of error in valuing the Ford at $13,500. Donna's second point is denied.

■ Her third point asserts the trial court abused its discretion in failing to award

interest on the "installment payments" totaling $118,000. In that regard, we note that because the first installment was due immediately upon entry of the decree, payment of only three installments was deferred. As we have seen, the final one was due 270 days after the decree.

In *Corbett v. Corbett,* 728 S.W.2d 550 (Mo. App.W.D.1987), the decree awarded the wife $50,000 as part of the division of marital property, to be paid in installments over two years at no interest. *Id.* at 553. On appeal, the wife argued the denial of interest was an abuse of discretion in that it allowed the husband to use her property for two years without compensating her. *Id.* at 555. The Western District of this Court, after reviewing pertinent cases, held the trial court properly considered all relevant factors and did not abuse its discretion in awarding no interest. *Id.* As authority, *Corbett* relied on *Geil v. Geil,* 647 S.W.2d 161 (Mo.App.E.D.1983), which found no abuse of discretion where the trial court awarded no interest on $13,230.50 payable in monthly installments of $350, and *Beckman v. Beckman,* 545 S.W.2d 300 (Mo. App.1976), which found no abuse of discretion where the trial court awarded no interest on $124,000 payable in monthly installments of $1,000. *Corbett,* 728 S.W.2d at 555.

Donna cites *In re Marriage of Paul,* 704 S.W.2d 278 (Mo.App.S.D.1986), which held the trial court erred in awarding no interest on $90,000 payable in 144 monthly installments of $625, and *W.E.F. v. C.J.F.,* 793 S.W.2d 446 (Mo.App.E.D.1990), which held the trial court erred in awarding no interest on $670,796 payable in 240 monthly installments of $2,794.98.

Those two cases are conspicuously different from the instant case in that the final installment here was due 270 days after the decree. In *Paul,* payment was spread over 12 years; in *W.E.F.,* over 20 years. Furthermore, both *Paul* and *W.E.F.* acknowledged there may be situations where a trial court need not award interest. *Paul,* 704 S.W.2d at 279; *W.E.F.,* 793 S.W.2d at 453.

We hold the instant case is more akin to *Corbett* and *Geil* than to *Paul* and *W.E.F.* Donna's third point is denied.

5. That would have been in August, 1993.

At trial, Donna's lawyer[6] identified Exhibit MM as a statement of his fee and expenses. It showed a balance due of $49,341.38.

The decree orders Frank to pay Donna's lawyer $7,500 in attorney fees and an additional $2,500 "for payment of expert witness fees and costs of litigation."

Donna's fourth point asserts the trial court erred in failing to award her "the total amount of her attorney's fees." She maintains the evidence showed she does not have the financial ability to pay her attorney's fee without assistance from Frank, who enjoys "a superior financial condition."

An award of attorney fees is within the discretion of the trial court. *Mehra,* 819 S.W.2d at 356–57[14]. Its ruling will be disturbed on appeal only upon a showing of abuse of discretion. *In re Marriage of Vinson,* 839 S.W.2d 38, 44[10] (Mo.App.S.D. 1992); *In re Marriage of Gourley,* 811 S.W.2d 13, 22[13] (Mo.App.S.D.1991).

We shall assume, without deciding, that Frank's financial position was superior to Donna's at time of trial. Even so, we find no merit in point four. The $10,000 awarded by the trial court is 20 percent of the hefty total of attorney fees and expenses claimed by Donna's lawyer. We find no abuse of discretion in the trial court's failure to award Donna a greater percentage of her lawyer's bill.[7] Further discussion of the attorney fee issue would have no precedential value. We reject point four and uphold the attorney fee award. Rule 84.16(b)(1) and (5), Missouri Rules of Civil Procedure (1995).

Donna's fifth, and final, point avers the trial court erred in finding that the parties were married December 21, 1980. Donna says this error concerns her because it appears in the decree and "may impact any future claim she may make for social security or related benefits."

The pleadings establish that the parties married September 21, 1980. Frank so testified. Donna's brief states the parties married that date, and Frank's brief adopts that statement.

We find no evidence in the record supporting the trial court's finding that the marriage occurred December 21, 1980. We therefore agree with Donna that the finding is erroneous and should be corrected.

The second amended decree of dissolution of marriage is affirmed in all respects except the finding that the parties married December 21, 1980. The decree is reversed as to that finding alone, and the cause is remanded to the trial court with directions to correct the decree by entering a finding that the parties married September 21, 1980. Because of this partial reversal, costs on appeal are taxed half against Donna and half against Frank. *Steffens v. Paramount Properties, Inc.,* 667 S.W.2d 725, 728–29[8] (Mo.App.E.D. 1984).

PREWITT and PARRISH, JJ., concur.

---

6. The lawyer representing Donna on appeal is not the lawyer who represented her at trial.

7. While it is not for us, in this appeal, to decide what Donna's lawyer should have charged her, we observe the total value of all marital and separate property disposed of by the decree is approximately $412,000. Donna's lawyer's bill is nearly one-eighth of that amount. If Frank's lawyer's bill is comparable, the combined attorney fees approach one-fourth of the parties' total assets, and this does not include attorney fees incurred on appeal.