**Clella Jean GRYDER, Respondent,**

v.

**Steven D. GRYDER, Appellant.**

No. 25620.

Missouri Court of Appeals,
Southern District,
Division One.

March 29, 2004.

---

Randy J. Reichard, Lowther Johnson, L.L.C., Springfield, for Appellant.

Richard L. Schnake, Paul G. White, Neale & Newman, L.L.P., Springfield, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Steven D. Gryder, ("Husband") appeals the Circuit Court's judgment dissolving his marriage to Clella Jean Gryder ("Wife"). Specifically, he alleges the trial court failed to classify and allocate certain real estate payments, and thereby failed to consider the requirements for disposition of marital property delineated in section 452.330.[1]

---

1. All statutory references are to RSMo 2000, unless otherwise specified.

The parties in this matter were married on May 27, 1988, and were separated on September 1, 2000. There were no children born of the marriage. Asserting that the marriage was irretrievably broken, Wife filed her Petition for Dissolution of Marriage on June 22, 2001, which was followed by Husband's filing of a Counter–Petition for Dissolution of Marriage on July 23, 2001.

The trial was held on March 5, 2003, with the primary controversy being the existence of a debt owed to Husband's mother ("Mother") for a certain tract of land ("the farm"), which had been deeded to the parties in June of 1994. The farm was comprised of seventy-two acres, and an old farmhouse in which Husband's parents retained a life estate.

Both parties agreed that beginning in January 1995, seven months after the real estate transaction, Husband began writing monthly checks to Mother in the amount of $100, with the payments continuing until the time of trial. Husband contended that he and Wife owed Mother a debt of $80,000 for the farm. However, Wife contended that she had no knowledge of a repayment obligation owed to Mother and it was her belief that the payments were gratuitous in nature.

After reviewing the testimony, the trial court entered its Findings and Recommendations for Judgment of Dissolution of Marriage. Holding that "the division of property is not intended to be equal" but that "it is an equitable division under the circumstances," the trial court set about discussing a "pivotal issue in the division of property and debt surround[ing] the [real estate] transaction between [Husband] and his parent...."

Paragraph 7 of the judgment, which deals entirely with the farm, recites that "[t]he history of the [real estate] transaction began" when Husband's father suffered a stroke, and Mother decided "to transfer real estate into [Husband] and [Wife's] name so that certain government benefits such as Medicaid would be available and assumedly for the purpose of not dissipating the estate," although "no note nor deed of trust exists" to commemorate any agreement between the parties.

Finding it uncontroverted that the parties had paid Mother $100 a month since 1995, the trial court reasoned "that at the time of trial $9,900 had been paid" to Mother "for 'the farm.'" While Husband had argued that "the remaining balance of the debt of $70,100.00 [should] be included as a debt to be divided by the Court," the trial court was "convinced that there [was] indeed some kind of a business relationship that exist[ed] [between Husband and Mother], but the true nature of that relationship was not disclosed...." Acknowledging Mother's life estate in the farmhouse, the trial court remained "unsure as to whether or not the $100 payment per month was for the [parties] to use the farm for [their] farming operation or whether or not the $100 per month was indeed to payoff the $80,000 figure that was the price agreed between [Husband] and [Mother]."

Thereafter, the trial court "consider[ed] the question of what happens to the debt" upon Mother's death. It set out:

[Husband] gave evidence that he did not intend to pay his siblings for the property and that he was also not going to inherit anything else because the farm was deeded to him. If the $80,000 is to be considered a legitimate debt, it would be incumbent upon [Husband] to pay the balance of the debt to the estate after [Mother's] death, but that obviously is not [his] intention. The evidence causes the Court to conclude that upon [Mother's] death the payments will cease and the prior deeding of the property to [the

parties] was to be an offset of his mother's estate as to [Husband's] other siblings. [Mother] did testify but she was not questioned as to whether or not there was any additional value to her estate that would be the equivalent of the [Husband's] inheritance, if it were to be considered as such.

The trial court was further concerned about the fact that the transaction was "not reduced to writing," and "without additional corroborative evidence, the Court must speculate as to whether the land transaction for $80,000 is a bona fide agreement or whether it was a transaction to benefit [Mother] and [Father] and be an advance to [Husband] as his inheritance upon the death of [Mother]." The trial court also found significant "that there is no evidence submitted by any party that would cause the acceleration of the payment, no indication there would be a balloon payment, and a simple calculation of a loan of $70,100 at the rate of $100 per month would take 701 months to have the loan extinguished or it will take 58 more years for the debt to be paid off." Finally, "the Court conclude[d] that [Husband] is responsible for a $100 a month amount but the total amount he will pay will be determined by how long his mother lives ... therefore, the Court concludes that it is not a debt that should diminish the total marital estate." The trial court then disposed of the residue of the parties' property and debts and dissolved their marriage.

Husband filed a subsequent Motion for Rehearing with the Circuit Court. In denying Husband's motion, the Circuit Court made the following docket entry:

> Court denies a new hearing but is hereby vacating the judgment and remanding the case to Commissioner Davis to clarify whether he found the $100 per month paid by [Husband] to his mother to be payments toward a marital debt in an amount certain, or whether it was some sort of payment made as rent to use the land for farming purposes.

Thereafter, the trial court amended its original findings to include a single, additional sentence: "The Court finds the arrangement does not comply with provisions of [section] 432.010 RSMo., the statute of frauds, and is found from the evidence to be, at best, an 'at will arrangement for the rent and use of the land by Respondent.'" [2]

This appeal followed.

■■■ The standard for appellate review of a judgment of dissolution is the same for reviewing any court-tried action. *Bullard v. Bullard,* 929 S.W.2d 942, 944 (Mo.App.1996). The judgment must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Thomas v. Thomas,* 76 S.W.3d 295, 299 (Mo.App.2002). We view the evidence in the light most favorable to the decree, disregarding contrary evidence and deferring to the trial court even if the evidence could support a different conclusion. *Carter v. Carter,* 869 S.W.2d 822, 830 (Mo.App.1994).

---

**2.** Section 432.010 sets out, in pertinent part: No action shall be brought ... to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, ... or upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, *shall be in writing and signed by the party to be charged therewith* ....

(Emphasis added.)

On appeal, Husband raises three points of trial court error. First, Husband alleges the trial court erred in failing to allocate or divide the $100 per month marital debt owed to his mother in contravention of section 452.330.1.[3] He additionally asserts that this error leads to such inconsistent and ambiguous findings in the judgment that reversal is warranted. Second, he argues there is a lack of evidence to support the ruling that the $100 per month was not a marital debt, because the debt was incurred during the marriage, Wife acknowledged its existence, and their history of making the payments evidenced their intent to repay it. Third, Husband maintains that certain factual statements contained within the judgment were against the weight of the evidence in that there was a lack of testimony to support them.

Because all of Husband's points address the same core issue, for ease of analysis and reading, we choose to address them together. In sum, Husband objects to the trial court's finding that "[the $100 per month payment] [was] not a debt that should diminish the total marital estate," as it was based on insufficient and misstated facts and, further, the trial court failed to distinguish the debt as a marital debt and allocate it accordingly. For reasons detailed below, we find that the trial court properly considered the obligation to be a marital debt, but not a debt in the amount suggested by Husband; and correctly treated the debt in its property allocation under section 452.330.

Here, the record reveals that the farm was acquired after the parties were married. With few exceptions, marital property refers to "all property acquired by either spouse subsequent to the marriage." § 452.330.2. Similarly, " '[t]he phrase "marital debts" encompasses all debts incurred during the marriage, either jointly or separately.' " *In re Marriage of Pahlow*, 39 S.W.3d 87, 92 (Mo.App.2001) (quoting *Hughes v. Hughes*, 994 S.W.2d 103, 107 (Mo.App.1999)). Therefore, the farm is marital property and its concomitant debt, if any, is a marital debt, both of

---

3. Section 452.330 states in pertinent part:

1. In a proceeding for dissolution of the marriage or legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

2. For purposes of sections 452.300 to 452.415 only, "**marital property**" means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

which are subject to division under the factors delineated in section 452.330.

As the party alleging trial court error, Husband has the burden of proving the existence and amount of the debt. *In re Marriage of Swanson*, 904 S.W.2d 88, 92 (Mo.App.1995). The trial court was "not compelled to believe [Husband's] testimony about the existence or amount of the alleged debt." *Id.* Noting that the existence of a loan is "heavily dependent on the trial court's determination of the credibility of the witnesses," we find that Husband did not carry his burden of proving that he and Wife were indebted to Mother for $80,000, as he claimed at trial. *Panettiere v. Panettiere*, 945 S.W.2d 533, 543 (Mo.App.1997); *see Cole v. Cole*, 633 S.W.2d 263, 265 (Mo.App.1982).

We initially note that there is "no document purporting to create an indebtedness on [the farm]." *Panettiere*, 945 S.W.2d at 543. The record reveals that there was testimony from Wife, Mother, and Husband that the agreement regarding the farm was never reduced to writing.[4] Later in the trial Husband changed his story and insisted that there had, in fact, been a document drawn up by Wife's sister. The court noted that "[w]hen transactions are not reduced to writing," the purpose of the transaction is subject to change. We determine the court made a correct finding that "the arrangement [in this matter] does not comply with provisions of . . . the statute of frauds." § 432.010. The trial court noted, "without additional corroborative evidence, the Court must speculate" as to the details of the land transaction.

Second, at an earlier deposition, Husband stated that his agreement with Mother was for $60,000, as opposed to the $80,000 claimed at trial. He admitted that

he had previously lied under oath in his deposition by reciting a lower price, explaining to the trial court that he could settle with Wife more easily if there were "less of a debt against the place."

Third, Wife testified that she had no knowledge of any total amount owed to Mother, or of any details relating to repayment of a loan. She recalled a single conversation with Husband regarding "[t]he payments to the parents for the land" wherein she and Husband had "discuss[ed] that [Husband] pay [Mother] $100 a month until she passed away, because [they] would be the one[s] to take care of [Mother]." She testified that it was her understanding that the $100 a month was to "help pay [Mother's] bills and stuff," and that Husband told her the payments were to stop upon Mother's death. Mother also testified that she had never personally talked to Wife about the matter. From our review of the foregoing, we determine there was substantial evidence supporting the trial court's conclusion that "the true nature of the relationship" had not been "disclosed" at trial.

Fourth, the payments to Mother, which began seven months after the transaction, do not establish that Husband was repaying a loan for the farm. We observe that Mother does not live in the farmhouse; testimony reveals she does not intend to do so in the future. Husband testified that he rents the farmhouse out for $375 a month and then gives Mother $100 from the rent received. There is little direct evidence to tie the $100 per month payment to the purported transaction at issue. The trial court specifically considered this when it found itself "unsure as to whether the $100 payment per month was for

---

**4.** In his Answers to Interrogatories Husband indicated "no such document exists regarding the alleged obligation to [Mother.]"

[Wife] and [Husband] to use the farm ... or whether or not the $100 per month was indeed to payoff [the farm]."

Fifth, Husband also testified that the farm had been "gifted" to them because Mother didn't want "the state to get all her money" and he "was the only kid in the family that really wanted [the farm.]" There was testimony that the transfer of land originally stemmed from the possibility of Father having to enter into a nursing home, and testimony that the transaction involved "[a] Medicaid issue." Husband further related that he "will get no inheritance from [his parents] because [he's] got the farm." The trial court's finding that "the prior deeding of the property ... was to be an offset of [Mother's] estate" is supported by the evidence adduced at trial.

The trial court was at liberty to believe or disbelieve husband's evidence establishing the indebtedness. *Levis v. Levis,* 713 S.W.2d 561, 564 n. 1 (Mo.App.1986). Under the circumstances of this case, and in light of the indefinite testimony of Husband, unsupported by any form of writing, including the lack of a security instrument, we cannot say the trial court erred by its findings.

Although the judgment in this case is wordy, the intention of the trial court can be ascertained from an examination of its language. *American Family Mut. Ins. Co. v. Hart,* 41 S.W.3d 504, 509 (Mo.App. 2000); *see Panettiere,* 945 S.W.2d at 539. We discern the trial court found the $100 per month payment to be, in fact, a marital debt. In its discretion, the trial court correctly allocated the debt to Husband. Under our standard of review, we are "concerned with the correctness of the result, not necessarily the course taken to reach it." *M.F.M. v. J.O.M.,* 889 S.W.2d 944, 954 (Mo.App.1995).

As this Court has authority to render "such judgment as the court ought to give," Rule 84.14, Missouri Court Rules (2003), we exercise our discretion to clarify the judgment, and specifically classify as a marital debt the $100 per month payment to Mother, an obligation which is allocated to Husband. § 452.330.1; *see Burk v. Burk,* 936 S.W.2d 144, 146 (Mo.App.1996).

Judgment is hereby entered classifying as a marital debt the $100 per month obligation to Mother. Husband is allocated the payment of this debt. In all other respects the judgment of the Circuit Court, as modified, is affirmed.

PREWITT, J. and GARRISON, J., concur.