Martha Lou MONTGOMERY,
Appellant,

v.

H.P. MONTGOMERY, Jr., Respondent.

Nos. 22896, 22917.

Missouri Court of Appeals,
Southern District,
Division Two.

April 25, 2000.

Motion for Rehearing or Transfer
Denied May 16, 2000.

Application for Transfer Denied
June 27, 2000.

Charles (Ed) Lee, Walker, Salveter, Lee & Graff, Springfield, for appellant.

Susan S. Jensen, Pratt & Fossard, Springfield, for respondent.

Before PREWITT, J., GARRISON, C.J., and BARNEY, J.

PER CURIAM.

By a decree entered on February 8, 1999, the trial court dissolved the marriage of Martha Lou Montgomery (Wife) and H.P. Montgomery, Jr. (Husband). The parties, both born in 1943, were married on March 15, 1974, and separated on March 16, 1996. Two of the three children born of this marriage were emancipated at the time of trial. The parties were awarded joint legal and physical custody of their remaining child who is disabled and over 22 years old.

The decree awarded Wife maintenance of $405 monthly, divided the marital property, and set nonmarital property aside to each party. Both parties appeal.

### Wife's Appeal

In her lone point on appeal, Wife claims the trial court erred in classifying 11,116 shares of Great Southern bank

stock and an investment account as Husband's nonmarital property. Wife alleges this erroneous classification of property resulted in an unjust distribution of marital property.

The background of this issue commenced in June 1989 when Husband sold his stock in the Lebanon Coca Cola Bottling Company for $362,500. Wife concedes that this stock was Husband's nonmarital property. On June 30, 1989, Husband opened a "Borrowed Money Account" (BMA) at Great Southern Bank in his and Wife's name as "joint tenants with right of survivorship." Husband deposited all the Coca Cola sales proceeds in this account. The BMA signature card, signed only by Husband, stated, in pertinent part, that "[i]t is agreed by the signatory parties with each other and by the parties with [Great Southern Bank] that any funds placed or added to the account by any one of the parties *are and shall be conclusively intended to be a gift....*"

On July 11, 1989, Husband took $62,500 from the joint BMA and opened another account in both parties' names at Great Southern Bank. This account was called a "Grand Sweep Account" (GSA). Both the BMA and the GSA were interest-bearing accounts. When earned, interest was deposited in the respective accounts.

Husband withdrew $50,022 from the BMA on December 21, 1989, in order to purchase 5,558 shares of stock in Great Southern Bankcorp, Inc. These shares were listed in Husband's name alone. Due to various stock splits, Husband accumulated a total of 33,348 shares of Great Southern stock.

After Wife commenced this action in October 1996, Husband sold 22,232 shares of Great Southern stock for $429,040. With these proceeds, Husband opened an "Investment Account" at Great Southern Bank in his name alone. Husband pledged the remaining 11,116 shares of Great Southern stock to secure a loan in his name only at Boatmen's Bank.

Husband closed the GSA on February 1, 1991. Wife closed the BMA on October 17, 1996, and received the sum of $429.

Shortly before the first day of trial (April 29, 1998), Husband's Great Southern Investment Account had a balance of $353,849. However, Husband testified that he had withdrawn approximately $115,000 from this account to pay capital gain taxes on the Great Southern stock he sold. He indicated that the balance of this account was approximately $238,850. The trial court valued this account at $353,849.

The parties received dividends from Husband's Great Southern stock. Husband acknowledged that the dividend checks were mailed to the parties' home and that he deposited the proceeds in the parties' joint household checking account at Commerce Bank. Wife paid family bills from this account.

When asked why he opened the BMA account in joint names with his wife, Husband answered as follows:

As I've mentioned several times before, my intention was to have the account set up such that if something did happen to me, it would very easily transfer to [Wife]. And as I've also mentioned, that came from years in the car business, suggesting to people to title in both names, which makes it a very simple matter if something happens to one party or the other.

Wife testified that the Great Southern accounts were marital property because (1) Husband opened the BMA in joint names specifically to receive the proceeds from the sale of his nonmarital property, (2) deposits were made to the Great Southern accounts from sources other than the Coca Cola proceeds, (3) Great Southern stock dividends were deposited in the parties' joint checking account and used for family purposes, (4) interest from the BMA and GSA was marital income and allowed to accumulate in those accounts, and (5) the parties had a general practice and agree-

ment to treat gifts and inheritances (including the Coca Cola proceeds) as joint marital property.

The trial court awarded Husband as his nonmarital property all of the pledged Great Southern stock valued at $287,682 and the Great Southern Investment Account valued at $353,849. The trial court determined that Husband did not intend to give Wife any of the Coca Cola proceeds by opening the BMA and that Husband's evidence rebutted the presumption of gift to her. Under the decree, Husband received $749,571 as nonmarital property and $95,000 in nonmarital debt. Wife received nonmarital property worth $12,650.

■ Appellate review of a dissolution of marriage judgment is governed by Rule 73.01(c) and the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Mistler v. Mistler*, 816 S.W.2d 241, 245 (Mo.App.1991). Thus, a judgment in a dissolution of marriage case must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

■ "The placing of separate property of a spouse into the joint names of both spouses creates a presumption that the property transferred becomes marital property, and clear and convincing evidence is required to show the transfer was not intended as a gift." *Stephens v. Stephens*, 842 S.W.2d 909, 913 (Mo.App.1992). The clear and convincing standard "refers to evidence which instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Marriage of Jennings*, 910 S.W.2d 760, 763 (Mo.App.1995). Where a spouse has caused separate property to be transferred to her and her spouse jointly, self-serving testimony that she did not intend a gift is entitled to little weight. *Stephens*, 842 S.W.2d at 914.

Here, Husband repeatedly testified that he did not intend to make a gift to Wife by putting her name on the BMA. Husband's testimony indicated that Wife's name was placed on the account in order to avoid probate. As noted, Husband's testimony that he did not intend a gift is entitled to little weight. Likewise, Husband's testimony regarding probate avoidance "does not corroborate Husband's intent to retain the funds as his separate property." *Clark v. Clark*, 919 S.W.2d 253, 255 (Mo. App.1996).

Husband argues that his "actions with the Coca–Cola proceeds indicate his intent to keep it as his property alone." He points to evidence that (1) he made all the decisions regarding the Coca Cola proceeds, (2) he did not consult with Wife prior to investing these proceeds, (3) he did not advise Wife concerning the investments in question, and (4) Wife "made no transactions" in the BMA other than closing the account and receiving $429. Husband emphasizes that his actions were similar regarding the Great Southern stock and Investment Account.

We discern little difference between this case and *Clark v. Clark, supra*. There, husband received an inheritance and opened several mutual fund accounts in the names of husband and wife "as joint tenants with right of survivorship." 919 S.W.2d at 254. The trial court divided the accounts as marital property. On appeal, husband claimed this classification was erroneous.

To rebut the presumption that husband's inheritance had been transmuted into marital property, husband indicated that he intended to reinvest the inheritance and try to double it in five years in order to share the proceeds with his brothers and sisters. *Id.* at 255. He insisted that he did not intend to make a gift to wife. *Id.* Husband also claimed he only placed his wife's name on the account for purposes of avoiding probate. *Id.*

This Court held that husband's evidence was insufficient to overcome the presumption of transmutation. We said that husband's evidence "falls short of instantly tilting the scales in the affirmative when weighed against the evidence in opposition, as required under the clear and convincing evidence standard." *Id.*

Here, the evidence in opposition to Husband's stated intent is stronger than the evidence in *Clark*. In this case, unlike *Clark*, Husband signed an agreement with Great Southern Bank indicating that funds placed in the BMA "shall be conclusively intended to be a gift." Considering this additional evidence along with the close resemblance to *Clark*, we hold that Husband's evidence does not overcome the presumption that he intended to make a gift of the Coca Cola proceeds to Wife. Under the clear and convincing standard, Husband's evidence does not instantly tilt the scales in his favor when weighed against the other evidence.[1]

"Marital Property" is defined in § 452.330.2[2] as "all property acquired by either spouse subsequent to the marriage." Certain exceptions, not relevant here, follow. Section 452.330.3 creates a statutory presumption that all property acquired by either spouse after the marriage and prior to dissolution of marriage is presumed to be marital property regardless of whether it is held individually or by some form of coownership. We have held that Husband transmuted his nonmarital property into marital property by opening the BMA. Thus, the purchase of Great Southern stock and the Great Southern Investment Account was property acquired after the marriage with marital funds. Titling these assets individually does not destroy the presumption of marital property.

■ However, trial court error in classifying property is not necessarily prejudicial. *Spidle v. Spidle*, 853 S.W.2d 311, 316 (Mo.App.1993). This court does not reverse a judgment unless the trial court error materially affected the merits of the action. Rule 84.13(b).

According to Wife's calculations (which Husband does not directly dispute), the trial court awarded Wife marital property valued at $250,336 along with marital debt of $3,629. Husband was awarded marital property valued at $175,020 along with marital debt of $45,641. Thus, the trial court divided gross marital property of approximately $425,000. However, the trial court failed to appropriately divide as marital property the Great Southern stock and Investment Account shown in the decree with a value of $641,531. This failure to divide over 60 percent of the marital property can only be viewed as prejudicial to Wife.

Therefore, the division of marital property and the designation of the Great Southern stock and Investment Account as Husband's nonmarital property must be reversed.

*Husband's Appeal*

■ In his first point, Husband claims the trial court erred in awarding Wife a 1992 Ford Ranger (value $6,500) and Husband a 1996 Suburban (value $24,175) along with a 1960 Pontiac (value $4,000) because these three vehicles were owned by Montgomery GMC Trucks, Inc. Husband and his brother each own one-half of the stock in this corporation.

■ We agree with Husband's contention that a court in a dissolution case may not exercise control over property belong-

---

1. Husband relies on the following three cases to support his argument: *Corbett v. Corbett*, 728 S.W.2d 550 (Mo.App.1987); *In re Marriage of Gilmore*, 943 S.W.2d 866 (Mo.App. 1997); and *Frerichs v. Frerichs*, 704 S.W.2d 258 (Mo.App.1986). These cases are factually distinguishable from the instant case and do

not aid Husband. The most compelling distinction is that none of Husband's cases have evidence of a signed agreement indicating that a gift was intended to Wife.

2. Statutory references are to RSMo 1994 unless otherwise indicated.

ing to a corporation even if one of the spouses is the sole shareholder of that corporation. *Graves v. Graves*, 967 S.W.2d 632, 636 (Mo.App.1998). However, this rule has no application to the vehicles in this case due to lack of evidence that the vehicles were corporate owned.

The trial court found that "there was no evidence presented to the Court that Montgomery GMC, Inc., is in fact a valid corporation and the Court has to assume since required filings on an annual basis with the Secretary of State is required, and no proof of that having been done, the corporate status has long been forfeited." Husband does not dispute this finding in any manner. Failing to do so, this uncontested finding resolves the issue. Point denied.

Husband's next point asserts the trial court erred in failing to divide all the parties' marital debts. Husband presented evidence that he owed $41,604 in credit card debt, but this debt was not mentioned in the decree.

Effective August 28, 1998, § 452.330.1 was amended. The amended version required the trial court to divide the "marital property and *marital debts*." (Emphasis added.) The decree in this case was entered on February 8, 1999, without recognizing the requirement of the amended statute.

Husband's point is well taken. Upon remand, the trial court shall divide the marital property and marital debt as required by § 452.330.1, RSMo Supp.1999.

Finally, Husband complains that the trial court's division of marital property was "one-sided" in favor of Wife and must be reversed. We do not address this point because of our previous determination to reverse the marital property division.

To summarize our holding, that portion of the trial court's decree dividing the marital property and finding the Great Southern stock and Investment Account to be Husband's nonmarital property is reversed. The remainder of the decree is affirmed. This cause is remanded for a division of marital property and marital debts consistent with this opinion, all in accordance with the requirements of § 452.330, RSMo Supp.1999. Upon remand, the trial court shall determine if, as shown in the decree, the Great Southern Investment Account value is $353,849 in light of Husband's testimony that he paid capital gains taxes of approximately $115,-000 from that account. Additional evidence may be heard on this issue if the trial court deems it necessary.