

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| MELISSA M. CARTER, | ) | No. ED112335 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 21SL-DR01819 |
| | ) | |
| DREW B. CARTER, | ) | Honorable Amanda B. McNelley |
| | ) | |
| Appellant. | ) | Filed: March 4, 2025 |

Before Lisa P. Page, P.J., John P. Torbitzky, J., and Virginia W. Lay, J.

Drew B. Carter (Husband) appeals from the trial court's September 11, 2023 judgment dissolving his marriage to Melissa M. Carter (Wife). We affirm in part and reverse in part.

## Background

Husband and Wife were married on May 1, 1999. They had two children during their marriage, who were in the eighth and ninth grades at the time of trial. On April 20, 2021, Wife filed a petition for dissolution of marriage (Petition) in St. Louis County. The court heard the case over three non-consecutive days, on April 25, 2023; May 2, 2023; and May 12, 2023. Wife filed a request for findings of fact, but Husband did not. The trial court entered its Findings of Fact, Conclusions of Law and Judgment of Dissolution of Marriage on September 11, 2023, which, *inter alia*, dissolved the marriage, and divided the marital and nonmarital property. Wife

was awarded spousal maintenance and child support. Husband was ordered to pay private school tuition for both children.

Husband filed a timely motion to amend, modify, correct judgment, or reopen evidence, or for a new trial on October 11, 2023, which was denied. This appeal follows. We will discuss the facts in greater detail as they relate to the individual points on appeal.

## Discussion

Husband raises five points on appeal. In his first point, Husband alleges the trial court did not properly calculate Wife's income in awarding her maintenance. In his second point, Husband asserts the trial court erred in imputing income to him because he deliberately reduced his income to avoid his support obligations. Third, Husband contends the trial court erred in averaging Husband's income over a four-year period for child support purposes in that the average artificially overstates his income. Fourth, Husband claims the trial court erred by ordering him to pay for 100 percent of private school tuition for both children. Fifth and finally, Husband alleges the trial court erred in characterizing and dividing his separate property in the Carter Management Trust as marital because he presented sufficient evidence to rebut the presumption of transmutation.

*Standard of Review*

When reviewing a decision from a court-tried case, we affirm the judgment of the trial court unless one of the following circumstances exist: (1) no substantial evidence supports the judgment; (2) the judgment is against the weight of the evidence; (3) the judgment erroneously declares the law; or (4) the judgment erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Substantial evidence is evidence that has some probative force on each fact that is necessary to support the trial court's judgment. *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014) (citing *In re K.A.W.,* 133 S.W.3d 1, 9 (Mo. banc 2004)). Probative force means the evidence has any tendency to make a material fact more or less likely. *Id.* at 199-200 (citing *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 367 (Mo. banc 1993)). When reviewing whether the trial court's judgment is supported by substantial evidence, we view the evidence in the light most favorable to the judgment and defer to the trial court's credibility determinations. *Id.* (citing *In re J.A.R.,* 426 S.W.3d at 626, 631–32 & n. 14.). Trial courts are free to believe any, all, or none of the evidence presented at trial. *Id.* (citing *In re J.A.R.,* 426 S.W.3d at 627).

The trial court is vested with broad discretion in awarding both maintenance and child support. We reverse only upon finding an abuse of discretion. *Dickerson v. Dickerson*, 580 S.W.3d 98, 103 (Mo. App. E.D. 2019); *Steffens v. Steffens*, 773 S.W.2d 875, 876 (Mo. App. E.D. 1989). Such awards shall not be disturbed unless the evidence is "palpably insufficient" to support them, and an appellate court will not substitute its judgment for that of the trial court. *Steffens*, 773 S.W.2d at 876 (citing *Hogrebe v. Hogrebe,* 727 S.W.2d 193, 195 (Mo.App.1987)). The trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Dickerson*, 580 S.W.3d at 103. We defer to the trial court even if the evidence could support a different conclusion. *Id.* If reasonable minds could differ about the propriety of the trial court's decision, there is no abuse of discretion. *Id.* at 103-04.

**Point I – Maintenance Calculation**

In his first point, Husband alleges the trial court erred in its calculation of Wife's net income for purposes of a spousal maintenance award. Wife concedes this point and, accordingly, we reverse point one.

Section 452.335 RSMo (2016)[1] governs maintenance awards in dissolution proceedings. Maintenance is intended to close the gap between the income of the spouse who seeks maintenance and that spouse's monthly expenses. *Sulkin v. Sulkin*, 552 S.W.3d 793, 796 (Mo. App. E.D. 2018). Awards must be "limited to the demonstrable needs of the party receiving support" and are not intended "to provide an accumulation of capital." *Heins v. Heins*, 783 S.W.2d 481, 483 (Mo. App. W.D. 1990). When an award of maintenance substantially exceeds the amount of the requesting party's reasonable monthly needs, it represents an abuse of discretion. *Id.*

Husband takes no issue with an award of maintenance or the court's imputation of Wife's gross annual income as $144,405. Instead, he challenges the court's calculation of her net annual income by reducing her gross income by both $25,459 in state and federal taxes, in addition to $28,102 for her itemized deductions and Child Tax Credit. As a result, the court found Wife's net annual income was $90,844, or approximately $7,570 per month to meet her reasonable needs of $12,244. Thus, the court took the difference between Wife's net annual income as calculated and her reasonable needs to find a shortfall of roughly $4,674, and ordered Husband to pay $5,000 per month as modifiable maintenance to Wife.

Husband claims and Wife agrees the court should have only subtracted Wife's projected tax liability of $25,459 from her gross annual income of $144,405, resulting in $118,946 net

---

[1] All further statutory references are to RSMo (2016) unless otherwise indicated.

4

annual income or $9,912 per month, reducing Husband's maintenance obligation to $2,332 per month and child support in the amount of $1,618 per month for two children and $1,043 for one child, consistent with Missouri Supreme Court Rule 88.01[2] and Form 14. Husband's first point is granted.

**Points II and III – Imputing Income for Child Support**

Husband's second and third points each concern the gross monthly income imputed to him in calculating child support. In his second point, Husband alleges the trial court erred because there was no substantial evidence to support the conclusion that he deliberately reduced his income to avoid his support obligations. In his third point, Husband contends the trial court erred in averaging Husband's income over a four-year period for child support purposes because the average is not supported by substantial evidence, does not reflect Husband's current earning capacity, and artificially overstates his income. We find substantial evidence supports imputing a four-year average income to Husband.

"What constitutes the appropriate circumstances to impute income is fact-dependent and must be determined case-by-case." *Payne v. Payne*, 206 S.W.3d 379, 385 (Mo. App. E.D. 2006) (internal citation omitted). When income is imputed, the issue is whether the evidence supports that amount. *Monnig v. Monnig*, 53 S.W.3d 241, 245 (Mo. App. W.D. 2001) (quoting *Honderick v. Honderick,* 984 S.W.2d 205, 212 (Mo. App. W.D. 1999)). In determining a parent's ability to pay child support, a court may consider past, present, and anticipated earning capacity. *Thill v. Thill,* 26 S.W.3d 199, 207 (Mo. App. W.D. 2000). Evidence of spending is also substantial evidence of a parent's earning potential. *Heck v. Heck*, 318 S.W.3d 760, 765 (Mo. App. W.D. 2010) (father's testimony about his intent to pay off debt indicated his intent to earn income).

---

[2] All references to Rules are to Missouri Supreme Court Rules (2023).

When imputing income in calculating the Form 14 presumed child support amount,

Comment H provides:

> H. *COMMENT*: *Imputed Income*: When determining whether to include imputed income and, if so, the amount to include in a parent's "gross income," a court or administrative agency shall consider all relevant factors, including:
>
> (1) The parent's probable earnings based on the **parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;** and
>
> (2) The parent's assets, residence, age, and health; and
>
> (3) The parent's occupational qualifications, employment potential, educational attainments, and record of seeking work; and
>
> (4) The parent's criminal record or other employment barriers; and
>
> (5) The available work or employment opportunities in the community and the prevailing earnings level in the local community; and
>
> (6) Whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home; and
>
> (7) **Other relevant background factors in the case**.

Mo. Sup. Ct. R. Form 14, Comment H (emphasis added).

Husband complains the record does not support an inference he can earn income from employment based upon a four-year average rather than three set forth in Comment H. We disagree and find the holding in *Ricklefs* persuasive:

> Any fair reading of this comment would indicate that a trial court, in determining the amount of income to impute to a party in its Form 14 [presumed child support amount] calculation, is not required in every instance to average the party's prior three years of income. In determining probable earnings, the trial court may rely on any time period as may be appropriate under the circumstances.

*Ricklefs v. Ricklefs*, 39 S.W.3d 865, 875 (Mo. App. W.D. 2001). The court explained that the Form 14 worksheet comment allows the trial court to consider both past and present earnings to

6

determine an average that was consistent with historical earnings and representative of future earnings; it could choose to ignore income history and look at income for a single year "if it found that amount to be an accurate predictor of his income" or it could choose to look at future earning capacity to determine the ability to pay child support. *Id.* at n.10 (quoting *Laubinger v. Laubinger*. 5 S.W.3d 166, 178-179 (Mo. App. W.D. 1999)).

Here the trial court relied on more than substantial evidence to impute a reasonable gross monthly income to Husband. The judgment made findings from the uncontroverted testimony that Husband is currently the chief executive officer and founder of Whistle Systems LLC, and the board which determines his compensation is comprised of Husband and his friend. Husband makes distributions in his sole discretion and he had not made a single one at the time of trial. The trial court reviewed Husband's 2021 Form W-2 wages of $130,023 and his 2022 Form W-2 wages of $113,577.18 from Whistle. The court took notice of the decrease even though Whistle earned almost two and a half times more gross revenue in 2022 than 2021. Husband testified in his deposition that Whistle paid a legal settlement of $1,071,398.01 to his former employer in 2021 and $4,750 in 2022. Husband also lent Whistle $180,000 from marital funds around the same time. The court found these actions burdened the marriage and "unnecessarily depleted the marital estate."

In addition to Husband's self-reported income from Whistle in 2021 and 2022, the trial court considered Husband's historical income from employment pursuant to the parties' jointly filed tax returns in the amount of $772,297 in 2019 and $671,185 in 2020. The court found there was "no dispute" regarding the income Husband earned from his former employer in 2019 and 2020 before starting Whistle in September 2020. The court held this evidence was directly relevant to his earning potential in imputing a four-year-average employment income of

7

$421,770.50. The court also averaged four years of Husband's cash flow from 2020 through trial in May 2023 in the amount of $152,699, which did not include the personal expenses paid on Husband's behalf from DREM, LLC, a barge operating business he owned. In sum, the court imputed gross income to Husband of $574,469 per year. Then, as when calculating Wife's gross annual income, the court added $54,904 from the income producing property he was awarded. This analysis resulted in an imputed gross annual income of $629,373, or $52,447 per month.

When imputing income based on the four-year average, the trial court specifically found Husband had an MBA from an ivy league school and historically earned a lucrative income. The court gave him the benefit of his reported income in 2021 and 2022 as determined by him and his friend even though his compensation decreased when Whistle earned almost two-and-a-half times more gross revenue in 2022 than 2021. Moreover, at trial Husband had still not exercised his sole discretion to make distributions, after Whistle had sufficient financial resources in 2021 to pay his former employer more than $1 million.

Husband further benefitted by the court's use of a four-year average regarding income from DREM as the amounts from 2020 and 2021 were substantially lower than 2022 through trial in May 2023. The court also heard evidence that just six months prior to trial, Husband reported his annual income was $1 million in an application for a business line of credit. Finally, substantial evidence was presented of Husband's extensive spending as demonstrated by extravagant non-business-related travel during the pending dissolution, to include paying for his girlfriend to fly to Kilimanjaro with him.

The court clearly did not find Husband's testimony credible regarding his compensation and his spending habits, but the trial court further found it "apparent" that Husband did not think the rules of the court applied to him. When the divorce was pending, Husband repeatedly

8

violated the trial court's temporary restraining order and St. Louis County Rule 68.3 by transferring securities and funds from marital accounts. The court unequivocally stated, "Husband does whatever he wants to his benefit, that much is clear."

We find this case is similar to the court's holding in *Harris*, in which there was evidence that the husband deliberately limited his income and his tax returns did not accurately reflect his actual income. *Harris v. Harris*, 655 S.W.3d 33, 40 n.2. (Mo. App. W.D. 2022). In *Harris*, the court found that Husband was capable of earning significantly more than he was earning at the time of trial and that he would "likely do so [again] once this case is concluded." *Id.* Similarly, here, the trial court rejected Husband's claims regarding his income for a number of reasons and considered other substantial evidence to support imputing an appropriate amount of income to him, which could have been much higher.[3] *See Sherman v. Sherman,* 160 S.W.3d 381, 387 (Mo. App. W.D. 2004).

In conclusion, we find the four-year average was a reasonable approach in this case. The court found Husband's income prior to starting his company, Whistle, was directly related to his earning potential, thus including that income in the average along with his most recent income in 2021 and 2022, was a logical methodology. This was not a random or speculative calculation. *See Monnig*, 53 S.W.3d at 247 (amount of imputed income must be supported by the evidence, and the court is not allowed to set the amount of income solely based on speculation). The trial court thoughtfully calculated an average squarely within Form 14's Comment H that was "appropriate" and "relevant" to demonstrate Husband's past earning, present earning, and future earning potential. *Ricklefs*, 39 S.W.3d at 875 n.10. Thus, we hold the trial court properly

---

[3] For instance, the court could have considered the evidence presented at trial regarding his 2018 income of $920,838. *See Ricklefs*, 39 S.W.3d at 875 n.10.

exercised its discretion, and we will not substitute our judgment for the trial court's logical conclusions based on sufficient evidence. *Haden v. Riou*, 37 S.W.3d 854, 860 (Mo. App. W.D. 2001). Husband's third point is denied.

## Point IV – Private School Tuition

Husband's fourth point alleges the trial court erred in its judgment regarding child support by ordering him to pay for 100 percent of private school tuition for both children over his objection in that no substantial evidence supports the conclusion that private school meets a particular educational need of either child. However, in the argument portion of Husband's brief, he concedes private education is in the best interest of the children and changes his argument to request this court should only find the allocation of the private school expenses to him was in error. Thus, his point and argument are not consistent in citing the legal reasons that support Husband's claim of error.

Under Rule 84.04(e), a brief must include an argument section that discusses the points relied on. "Points that are not developed in the argument are deemed to be abandoned." *Wallace v. Frazier*, 546 S.W.3d 624, 628 (Mo. App. W.D. 2018). "To develop a point relied on, the 'argument should show how the principles of law and the facts of the case interact.'" *Id.* (quoting *Kim v. Kim*, 431 S.W.3d 524, 526 (Mo. App. W.D. 2014)). "An appellant's failure to substantially comply with Rule 84.04 'preserves nothing for our review' and constitutes grounds for dismissal of the appeal." *Id.* at 626 (quoting *Summers v. Mo. Dep't of Corr.*, 459 S.W.3d 922, 923 (Mo. App. W.D. 2015)). However, we review Husband's point *ex gratia* solely as to his financial responsibility to pay for private school. *See Kim v. Won II Kim*, 443 S.W.3d 29, 31 (Mo. App. W.D. 2014).

When calculating the presumed child support amount using its own Form 14, the trial court required Husband to pay 100 percent of the costs of the two minor children to attend private or parochial high school, from grades nine through twelve, subject to certain limitations such as the inclusion of books and fees but exclusion of scholarships or aid. The court found the parties have the ability to continue paying for the private school for the children by utilizing Husband's properly imputed income and the MOST 529 Education Plan accounts (529 accounts).

A court's decision to include private school tuition in a child support award is fact-specific and merits a case-by-case analysis. *Sendlein v. Sendlein*, 655 S.W.3d 422, 432 (Mo. App. E.D. 2022). A parent's disagreement with sending a child to private school or their objection to paying for the same does not alone justify the denial of including private school cost as part of child support for educational expenses. *McLaughlin v. McLaughlin*, 639 S.W.3d 472, 479 (Mo. App. E.D. 2021). A parent's lack of willingness to pay remains a relevant factor, as does the financial means of the person providing support. *Id.*; *Shepard v. Shepard*, 47 S.W.3d 412, 416 (Mo. App. S.D. 2001). The trial court is free to enter a separate award for extraordinary child-rearing costs, so long as it avoids "redundancy in the children's living expenses." *See Hart v. Hart*, 210 S.W.3d 480, 491 (Mo. App. W.D. 2007) (quoting *Foraker v. Foraker*, 133 S.W.3d 84, 98 (Mo. App. W.D. 2004) (regarding post-secondary education expenses).

In *Shepard*, the wife complained the trial court erred in failing to include private school tuition in the child support amount it ordered the husband to pay; however, the evidence showed that in addition to husband's wish not to pay, the parties had discussed taking their child out of the private school, and the wife found nothing "wrong" with the public school. *Shepard*, 47 S.W.3d at 416. The *Shepard* court discussed *In re Marriage of Manning*, wherein the appellate

11

court reversed the decision of the trial court for failing to include private schooling in its child support order. *In re Marriage of Manning,* 871 S.W.2d 108, 111 (Mo. App. S.D. 1994). The court found the cost of education is a proper factor to consider, and "including costs for private education is conditional upon such education being within the financial means of the person or persons providing support." *Shepard*, 47 S.W.3d at 416 (quoting *Manning*, 871 S.W.2d at 111).

The *Shepard* court also emphasized the trial court's remark at the conclusion of trial about the disparity between the cost of tuition and the non-custodial parent's income, quoting "that it's a true sacrifice for the parties to have been sending the child to [the private school] in the past. And if the child continues to go to [the private school], it's going to be an extraordinary expense for a couple with this standard of living." *Id*. The court held the wife failed to prove that private school met any particular educational needs of her child and held the trial court committed no error in excluding private school cost from the child support the husband was ordered to pay. *Id.*

Here we see no such sacrifice for Husband, who now agrees the children should stay at the private school, but only complains that he should not pay for all of its cost. Tuition was traditionally paid with Husband's salary and at trial in May 2022, it was paid for the 2023-2024 school year. The children's 529 accounts totaled approximately $695,744.33, not including an additional $232,805.94 held in other accounts for their benefit. Husband specifically complains paying the children's tuition would "be nearly my entire net salary." While this may be accurate based on his reported W-2 income, it is grossly inaccurate based upon the substantial evidence of his actual income presented at trial as previously discussed in our analysis. Although the amount of tuition is substantial, the trial court's calculation of Husband's monthly income of $52,447 per month is much greater than Wife's and we conclude the order to pay was well within Husband's

12

financial means. The trial court reasonably exercised its discretion to order Husband to pay the remaining years of private school tuition, as it was always paid with his salary. The trial court did not err in ordering Husband to pay 100 percent of the children's private school tuition. Husband's fourth point is denied.

## Point V – Characterizing Gift Account as Marital

In his fifth and final point on appeal, Husband alleges the trial court erred because the substantial evidence does not support the trial court dividing the gift account he contributed to the Carter Management Trust (Trust) as marital property and awarding 65.52 percent to Wife and 34.48 percent to him. Husband does not challenge whether the property was presumed transmuted, but argues the evidence of the Trust's express language was sufficient to rebut the presumption.

Husband believes the Trust contains express terms that address the characterization of property conveyed to the trust. Specifically, Article 1.3.2 recognizes that "[s]ettlors do not intend to alter the marital property character of their property as such is determined under the laws of their domicile (currently the State of Missouri), merely due to the conveyance of assets to this trust, or the administration, investment, or distribution of such assets pursuant to the terms of this Agreement." Husband claims this unambiguous language demonstrates that the separate property contributed to the trust would not transmute to marital property as a result of the conveyance, and even if it does not "proactively counteract the presumption of transmutation under the law, it represents clear and convincing evidence which instantly tilts the scales in favor of [Husband's] position." If this was the only evidence to support Husband's claim, his argument might have merit, but because we find the court properly considered other substantial evidence to conclude that Husband failed to rebut the presumption of transmutation, we affirm.

13

Section 452.330.1 requires the trial court to set apart to each spouse any non-marital property and to "divide the marital property and marital debts in such proportions as the court deems just. . . ." The trial court has broad discretion in dividing marital property. *Dickerson*, 580 S.W.3d at 107. On appeal, the appellate court must "presume the division of property is correct, and the party challenging the property division bears the burden of overcoming the presumption." *Id.* This court will not retry the case, but accepts the evidence as true with all its reasonable inferences therefrom in the light most favorable to the trial court's judgment. *Groenings v. Groenings*, 277 S.W.3d 270, 274 (Mo. App. E.D. 2009).

Missouri recognizes the concept of transmutation which turns non-marital property into marital property as a consequence of a transfer of that property, either as a gift or by express or implied agreement of the spouses. *Hoecker v. Hoecker*, 188 S.W.3d 497, 500 (Mo. App. W.D. 2006); Changes in characterization of property—Generally, 21 Mo. Prac., Family Law § 7:11 (3d ed.) (citing Krauskopf, *Marital Property at Marriage Dissolution,* 43 Mo. L. Rev. 157, 192 (1978) (defining "transmutation" as "a change in the character of the property from either separate to marital or marital to separate due to the ***intent*** of the parties." (emphasis added)). When a spouse titles his or her separate property into the joint names of both spouses, a rebuttable presumption arises that the transferred property has been transmuted into marital property. *Selby v. Selby*, 149 S.W.3d 472, 484 (Mo. App. W.D. 2004); *Stephens v. Stephens*, 842 S.W.2d 909, 913 (Mo. App. S.D. 1992).

This presumption of transmutation can only be rebutted with clear and convincing evidence that the owner spouse did not intend to convert the property to marital property. *Selby*, 149 S.W.3d at 484. The clear and convincing standard "refers to evidence which instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact

14

finder's mind is left with an abiding conviction that the evidence is true." *In re Marriage of Jennings*, 910 S.W.2d 760, 763 (Mo. App. S.D. 1995).

Husband argues he overcame the presumption that he intended the Charles Schwab One Trust Account No. x6691 (Account x6691) in the Trust to be transmuted into marital property, such as in *Corbett*, where the clear and convincing evidence supported Mr. Corbett's rebuttal of the presumption after he placed separate funds in joint tenancy but sought reimbursement to the fund held as his separate property. *Corbett v. Corbett*, 728 S.W.2d 550, 555 (Mo. App. W.D. 1987). There, it was "quite clear that over the years Mr. Corbett tightly controlled his separate property and, except for a small part, kept it in his own name or restored it to his own name." *Id.* The court held the trial court could readily perceive Mr. Corbett's intent to retain his inheritance and not transmute it to marital property, given the evidence of Mr. Corbett's "tight control and insistence upon reimbursement to the fund." *Id.*; *See also Kinsey-Geujen v. Geujen*, 984 S.W.2d 577, 579-80 (Mo. App. W.D. 1999) (evidence that inadvertence and a mistake by bank personnel supported the contention that her nonmarital property was transferred into the joint checking account, but there was no evidence that wife intended the mistaken transfer to be a gift).

Other cases demonstrate the inability to rebut the presumption of transmutation once the parties have jointly titled the property. In *Clark*, the husband used an inheritance to fund mutual fund accounts in the joint names of husband and wife. *Clark v. Clark*, 919 S.W.2d 253, 254 (Mo. App. S.D. 1996). The husband repeatedly testified he did not intend to make a gift to wife by putting her name on it, but the court afforded it little weight as the wife testified he referred to it as "our money." *Id*. at 255. The court also found husband's testimony that he did it to avoid probate "does not corroborate Husband's intent to retain the funds as his separate property." *Id*. The *Clark* court held that husband's evidence was insufficient to overcome the presumption of

transmutation because it "falls short of instantly tilting the scales in the affirmative when weighed against the evidence in opposition, as required under the clear and convincing evidence standard." *Id.*

The *Montgomery* court relied on *Clark* in reaching the same holding. *Montgomery v. Montgomery*, 18 S.W.3d 121, 124 (Mo. App. S.D. 2000). The *Montgomery* court found the evidence in opposition to the husband's stated intent even stronger than the evidence in *Clark* because the husband also signed an agreement with the bank indicating the proceeds from his nonmarital property placed in a joint BMA account "shall be conclusively intended to be a gift." *Id.* at 125. The court emphasized that where a spouse has caused separate property to be transferred to him and his spouse jointly, self-serving testimony that he did not intend a gift is entitled to little weight. *Id.* at 124 (citing *Stephens*, 842 S.W.2d at 914). As in *Clark*, the court considered this evidence to hold husband's evidence did not overcome the presumption that he intended to make a gift of the proceeds to Wife because it did not "instantly tilt the scales in his favor when weighed against the other evidence." *Id.* at 125.

Here, we agree with the trial court and find as in *Clark* and *Montgomery*, Husband failed to rebut the presumption that transferring his separate gift account into the jointly titled Trust transmuted it into marital property. The Trust language alone does not constitute sufficient evidence to "instantly tilt the scales in his favor" and show he intended the gift account remain separate property. Rather, the substantial evidence presented at trial supports the parties' intent to create a joint, marital account and fails to "corroborate Husband's intent to retain the funds as his separate property." *Montgomery*, 18 S.W.3d at 124 (quoting *Clark*, 919 S.W.3d at 255).

There is no dispute Husband received a gift of $25,000 as a three-year-old child from his grandfather. The funds were invested in a securities account in Husband's sole name until it was

16

ultimately transferred to the Trust in the Account x6691 in 2018. The Trust was created on March 14, 2011, and named Husband and Wife as the settlors, trustees, and beneficiaries. Together, they titled the Trust as the "Carter Management Trust," and funded it with $10. Both Husband and Wife testified that they did not move significant property into the Trust until May 2018 because they were told they needed to place assets in the Trust to further the intention of their Trust and avoid probate, which does not "corroborate" an intent to maintain such funds as separate property. *See Clark*, 919 S.W.2d at 255. This created a presumption that when Husband's gift account was used to fund Account x6691, it was transmuted to marital property. *Id.*

This presumption was further supported by the testimony of both parties. Wife testified they had discussed the purpose of the Trust was to "protect our assets and to provide additional income during our lifetime." Wife said Husband referred to Account x6691 as "ours." *See id.* at 254. She said they made major financial decisions based on this account, including the type of house they could buy, how frequently they could travel and where the children would attend school.

Husband testified that he wished to "protect me and [Wife] during our marriage" and avoid probate if anything happened to them. *See id.* at 255. He acknowledged they used funds from Account x6691 for the down payment and improvements on the parties' prior home, for contributions toward the marital residence, and for paying their rent but he did not seek reimbursement to his gift account as in *Corbett*. In fact, he did not demonstrate any control over a separate part of the Trust or attempt to rectify a mistake in moving the inheritance into the marital Trust. *See Corbett*, 728 S.W.2d at 555, and *Kinsey-Geujen*, 984 S.W.2d at 579-80. Husband testified it was never his intention to gift Wife half of Account x6691 when they placed

17

it in the name of the Trust, but the court found that was a "self-serving statement" and used its discretion to determine it should be given no weight. *See Montgomery*, 18 S.W.3d at 124.

Husband simply relied on a clause in the Trust as sufficient evidence to rebut the presumption of transmutation arising from his conduct demonstrating otherwise. Indeed, it is noteworthy, Husband failed to avail himself of the protection of that language when he executed the Schwab One Account Application for Trust on June 5, 2018, and indicated that the "original source of any assets that will be transferred into the fund" was "salary/wages/savings." He did not elect to choose the option of "inheritance." The application also indicates the intended purpose was "investing of trust assets." As in *Montgomery*, we find Husband's choice in denominating the "original source" as "salary/wages/savings" in funding Account x6691 constitutes his express agreement that his previously held separate property was intended to be marital. This agreement demonstrates Husband's intent to give Wife access to and allow her to benefit from these funds in Account x6691 in the Trust. *See Montgomery*, 18 S.W.3d at 124; *Hoecker*, 188 S.W.3d at 500.

The judgment of the trial court is supported by substantial evidence, based on Husband's own testimony regarding his intent when he funded the Trust with his separate property. Due to his decision not to avail himself of the express Trust language by characterizing the transfer as "salary/wages/savings" rather than an "inheritance," we hold Husband failed to present evidence sufficient to "instantly tilt the scales in his favor" of rebutting the presumption of transmutation. *See Clark*, 919 S.W.2d at 255; *Montgomery*, 18 S.W.3d at 124. Accordingly, the trial court did not err in properly applying Section 452.330.1 by classifying Account x6691 as marital and equitably dividing the account. Husband's fifth point is denied.

18

## Conclusion

The judgment of the trial court is reversed as to Wife's gross annual income as set forth in point one. The cause is remanded for the court to adopt a Form 14 worksheet consistent with Husband's point on appeal and enter judgment in the amount of $2,332 for maintenance as well as corresponding child support of $1,618 for two children and $1,043 for one child in Wife's favor. Rule 84.14. The trial court's judgment is affirmed regarding Husband's second, third, fourth, and fifth points on appeal.

_____
Lisa P. Page, Presiding Judge

John P. Torbitzky, J., and
Virginia W. Lay, J., concur.